NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0142n.06
Filed: December 2, 2004

Nos. 03-5327/5328

### UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, upon the relation and for the use of the TENNESSEE VALLEY AUTHORITY, | ) ) ) ) | |
| Plaintiff-Appellee, Cross-Appellant, | ) ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| EASEMENTS AND RIGHTS-OF-WAY OVER 6 ACRES OF LAND, MORE OR LESS, IN MADISON COUNTY, TENNESSEE; WILLIAM JOBE ROBINSON, JR.; CHARLES C. EXUM, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| STEAM MILL FERRY PARTNERS, | ) ) | |
| Defendant-Appellant, Cross-Appellee. | ) ) | |

Before: KENNEDY, SUTTON, and COOK, Circuit Judges.

PER CURIAM. The Tennessee Valley Authority ("TVA") and Steam Mill Ferry Partners ("Steam Mill") cross-appeal the district court's judgment awarding Steam Mill just compensation of $146,000 for an easement (for TVA's use) on property that Steam Mill purchased for sand mining. Steam Mill contends that the district court erred by basing the amount of compensation on the surface area of the easement and not on an amount that included additional acreage that the

easement would purportedly affect. The TVA argues that the district court erred by using the wrong valuation method to determine Steam Mill's compensation and by incorrectly calculating the compensation using that method. Concluding that the record does not support all of the district court's conclusions, we remand the case for further factfinding regarding several aspects of the court's decision.

In reviewing a district court's just-compensation determination, we give its legal conclusions de novo review and its findings of fact clear-error review. *United States v. 461.88 Acres*, No. 82-5780, 729 F.2d 1462 (6th Cir. Feb. 6, 1984) (unpublished); *United States ex rel. TVA v. Easement & Right of Way 100 Feet Wide*, 447 F.2d 1317, 1320 (6th Cir. 1971). A finding of fact is clearly erroneous when the reviewing court, based on the entire evidence, is "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 573 (1985). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id*. at 573–74.

The district court's analysis contains three flaws. First, the district court did not apply an accurate measure of compensation. The correct measure of compensation for an easement, as for any partial taking, is the difference in fair market value of the *whole tract* before and after the taking. *See United States v. 2,847.58 Acres*, 529 F.2d 682, 686 (6th Cir. 1976). In this case, the relevant

question is what impact the easement would have on the useful life of the mine. Because the life of the mine will be shorter after the TVA power lines are placed on the easement, the royalty payments will end sooner than otherwise expected, and the loss of those future payments must be discounted (by more years than just one) to present value. *See Cloverport Sand & Gravel Co. v. United States*, 6 Cl. Ct. 178, 200–01 (Cl. Ct. 1984). The record does not support the district court's apparent assumption that Steam Mill would stop mining the next year instead of continuing to mine other sections of its property.

A correct application of the royalty capitalization method requires that the district court take the royalties from the life of the mine before the taking and subtract the royalties from the life of the mine after the taking. For example, assume that 3 acres per year can be extracted and absorbed by the market and that the impacted area is 9 acres. Because the land consists of 90 acres, the life of the mine (or Steam Mill's income stream) before the taking would be 30 years. Since 9 acres are impacted, 3 years of the mine's life would be lost as a result of the taking, leaving only a 27-year income stream. Assuming that Steam Mill can expect to receive a royalty of $0.50 per ton and 320,100 tons (3 acres) can be extracted per year and that we apply a 10% discount rate, the present value of the 30-year income stream would be $1,508,777, and the present value of the 27-year income stream would be $1,478,417. Just compensation, being the difference between the two streams, would be $30,360.

Second, the evidence does not support the annual mining rate of 2.9 acres (320,100 tons) used by the district court in its calculation. In reaching this conclusion, the court relied on its

expert's analysis. But this expert testimony, which itself relied on testimony from an individual (Mr. Johnson) at Steam Mill, concluded that 2.9 acres could be mined in "one to two years." JA 130. Steam Mill's appraiser, moreover, testified that based on information he had received from Steam Mill, only one acre per year could be extracted. JA 65. Even assuming that Steam Mill could mine 2.9 acres per year, which the record does not support, the district court also should have considered whether market demand suffices to absorb this supply of sand. *See Cloveport*, 6 Cl. Ct. at 199; *United States v. 47.14 Acres*, 674 F.2d 722, 726–27 (8th Cir. 1982).

Third, in concluding that only 2.9 acres would be affected by the easement, the district court also determined that only the land under the surface area of the easement could no longer be mined. Even the court's expert, however, admitted on cross-examination that the TVA would require a slope restriction to ensure the stability of its power-line poles and that this slope restriction would extend beyond the area covered by the easement. JA 118–19. The TVA's engineer testified that the slope-restriction requirement would preclude any mining within a 25-foot radius around the poles and guys. JA 89. Beyond the 25-foot radius, he added, the TVA would require a two-to-one slope for the first 25 feet of depth (i.e., for every two feet out, the defendants could mine one foot down). In addition to these restrictions, the TVA required a four-to-one slope for the remaining 25 feet of depth. JA 88–90. All told, these restrictions affected an additional 5.825 acres. In response, the TVA argues that this 5.825-acre figure may be offset by the fact that Steam Mill could mine "areas in the right-of-way between and to the sides of the poles," and that there were "areas in the right-of-way where mining would have been restricted in any event to provide lateral support to an adjoining

property owner." TVA Br. at 8–9. Determining whether this offset argument is correct, however, requires sheer speculation, as the district court never made any such finding on this point.

For these reasons, we remand the case to the district court for further findings and, if necessary, for further evidence and new conclusions.